UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

DORIAN HUDSON,                    1:20-cv-05771-NLH-AMD

      Plaintiff,              **OPINION**

  v.

EXPRESS TRANSFER &
TRUCKING,
      Defendant.

---

**APPEARANCES**

PREEYA BANSAL
MURPHY LAW GROUP, LLC
EIGHT PENN CENTER, SUITE 2000
1628 JOHN F. KENNEDY BLVD.
PHILADELPHIA, PA 19103

   *On behalf of Plaintiff*

JEFFREY DOWNS
J. DOWNS LAW
69 S. MAIN STREET
MULLICA HILL, NJ 08062

   *On behalf of Defendant*

**HILLMAN, District Judge**

    Plaintiff Dorian Hudson filed a complaint alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and the New Jersey Wage and Hour Law because he was not paid overtime compensation. Plaintiff also alleges violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("NJLAD"), because he was terminated in connection with his actual or perceived disability, and in

retaliation for his requests for reasonable accommodation. The parties' reached a settlement on or about August 10, 2020, and now pending before the Court is the parties' joint motion to approve the settlement.

Because Plaintiff's claims are for alleged violations of the FLSA, the Court is required to review the settlement agreement and determine whether the matter concerns a bona fide dispute, and whether the settlement is a fair and reasonable resolution for Plaintiff.  See Brumley v. Camin Cargo Control, Inc., 2012 WL 1019337, at *1 (D.N.J. 2012) ("Employees have two avenues for compromising an FLSA claim: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); and (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)."); Chillogallo v. John Doe LLC #1, 2018 WL 4735737, at *1 (D.N.J. 2018)(quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982)) ( "When employees bring a private action under the FLSA, and present to the district court a proposed settlement pursuant to that Act's § 216(b), the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."); Bettger v. Crossmark, Inc., 2015 WL 279754, at *3 (M.D. Pa. 2015) ("Although the Third Circuit has not addressed whether [FLSA] actions claiming unpaid wages may be settled

privately without first obtaining court approval, district courts within the Third Circuit have followed the majority position and assumed that judicial approval is necessary.").

The parties have settled the matter for $53,160.53 inclusive of attorneys' fees and costs.  The parties have provided the Court with the settlement agreement, which details the procedural history of the case, the settlement amount for Plaintiff, the attorneys' fees, the release of his claims against Defendant, no admission of liability by Defendant, a limited confidentiality provision, non-disparagement and neutral reference provisions, and the dismissal of the action with prejudice.  (Docket No. 8.)  Plaintiff will receive (1) $17,077.17 relating to his claim of wage-based damages, including any claim of overtime wages, less any and all appropriate withholdings and deductions, and an IRS Form W-2 shall be issued to Plaintiff for this amount, and (2) $17,077.18 for his claims of non-wage damages, and an IRS Form 1099 shall be issued to Plaintiff for this amount.  Plaintiff's counsel shall receive $19,006.18 in fees and costs.[1]

---

[1] The FLSA provides, "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  A plaintiff is also entitled to "a reasonable attorney's fee to be paid by the defendant, and

The Court finds that the matter concerns a bona fide dispute and the settlement - as far as the monetary compensation and attorneys' fees - is a fair and reasonable resolution for Plaintiff.  The parties' dispute the average number of hours Plaintiff worked between June 2017 and March 2020, with Plaintiff alleging that he worked an average of forty-five (45) to fifty-five (55) hours per week, and Defendant countering that he did not work forty-five (45) to fifty-five (55) hours per week and was paid for all hours worked.  As to the reasonableness of this resolution, the parties explain:

> Plaintiff stands to receive, *even after attorneys' fees and costs*, in excess (i.e. approximately one hundred eighteen percent (118%)) of the overtime compensation, liquidated damages, *and* back pay (to date, with respect to Plaintiff's LAD claims), which he could reasonably expect to prove at trial.  This result is considerable in light of the risks Plaintiff faced in establishing liability and damages in this case.  If one excludes the back pay damages potentially recoverable by Plaintiff with respect to his LAD claims *and* attorneys' fees and costs, this percentage increases to a recovery by Plaintiff of approximately three hundred eighty percent (380%) of Plaintiff's total estimated potential recovery in overtime compensation and liquidated damages.

(Docket No. 8 at 3 (emphasis in original).)

The parties further relate that "[w]hile Plaintiff's counsel believes Plaintiff's claims to be meritorious, they are experienced and realistic, and understand evidentiary hurdles

---

costs of the action."  Id.

4

associated with proving hours worked in the absence of accurate recordkeeping." (Id. at 3.)

The Court agrees that these considerations compel the conclusion that the settlement is fair and reasonable under the circumstances. The Court notes that despite apparent proof difficulties and other potential defenses, Plaintiff will receive both economic and non-economic damages as contemplated by the statute.[2]

With regard to attorneys' fees, Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages under the FLSA. 29 U.S.C. § 216(b). To determine the reasonableness of an attorneys' fee award in a FLSA action, judicial review is required "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." Brumley, 2012 WL 1019337, at *9 (citations omitted).

Plaintiff's counsel relates that $19,006.18 in fees and costs are fair and reasonable because that amount is consistent

---

[2] The parties explain that Plaintiff's settlement amount (exclusive of attorneys' fees and costs) includes his total estimated owed overtime premium ($4,536.50), plus an equal amount in liquidated damages as required by statute, as well as an additional $25,081.31. This latter amount, although not specifically designated as such, represents a resolution of Plaintiff's claims under the NJLAD. (Docket No. 8 at 3 n.1.)

5

with the contingency fee agreement entered into between Plaintiff and counsel at the outset of this litigation. (Docket No. 8 at 3.)

The Court has no reason to question the reasonableness of the amount of attorneys' fees and costs in this case. See Punter v. Jasmin Intern. Corp., 2014 WL 4854446, at *8 (D.N.J. 2014) ($17,685.00 in attorney's fee reasonable for FLSA settlement totaling $27,620); Joseph v. Caesar's Entertainment Corp., 2012 WL 12898816, at *3 (D.N.J. 2012) ($20,288.50 in fees and costs reasonable for FLSA settlement award of $29,611.50); Cox v. Elite Energy LLC, 2011 WL 4406364, at *6 (D.N.J. 2011) (noting that FLSA claims may involve relatively small monetary awards, and a court "should not reduce a fee award solely on the basis that the attorney's fees are disproportionate to the damage award"); see also Joseph, 2012 WL 12898816, at *2 ("If the parties submit a proposed FLSA settlement and represent that the plaintiff's attorneys' fees was agreed upon separately and without regard to the amount paid to the plaintiff, then the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.") (citations and quotations omitted).

While the Court finds that the parties have demonstrated a bona fide dispute, the amount of compensation to Plaintiff is fair, and the attorneys' fees are reasonable, the Court

6

questions the validity of the limited confidentiality and general release provisions.³  (Docket No. 8-2 at 4-6.)

The limited confidentiality provision provides:

> ETT and Hudson understand and agree that this Agreement and its [sic] shall be confidential by and amount [sic] the Parties.  In response to any inquiries regarding this Lawsuit, the Parties agree to simply state, "The matter has been resolved, and to refrain from further comment. [sic]  However, this limited confidentiality requirement shall not prohibit the Parties from disclosing the existence or terms of this Agreement to their respective legal counsel, accountants, financial advisors, spouses, or close family members, or as may be compelled by court order, subpoena, or other legal process.  Hudson understands, covenants, and agrees that ETT may seek to enforce this limited confidentiality requirement by seeking appropriate equitable relief, but that ETT shall not be entitled to recover legal damages, penalties, fees, expenses, or costs associated with ETT's [sic] violation of this confidentiality requirement in any such enforcement action.

(Docket No. 8-2 at 6.)

---

³ The Court also takes issue with the provision regarding this Court's continuing jurisdiction over the "administration and enforcement" of the settlement agreement.  The final provision provides:

> 17. Continuing Jurisdiction. The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement for the purpose of the administration and enforcement of this Agreement.

(Docket No. 8-2 at 8.)  This Court declines to endorse a retention of jurisdiction provision that is without a reasonable end date.  In addition to the omission or modification of the confidentiality and release provisions as discussed below, the parties will be directed to modify the continuing jurisdiction provision to provide a reasonable termination date for the Court's retention of jurisdiction.

7

The general release provides:

Hudson agrees that he shall irrevocably and unconditionally release, acquit and forever discharge ETT and its parents, subsidiaries, members, managers, officers and directors with respect to all claims, known and unknown to him, with the exception of ETT's obligations to Hudson under this Agreement, including any wage and hour claims under state or federal law relating to his employment by or provision of services to ETT including, without limitation, the failure to pay wages, back wages, overtime, minimum wages, interest, liquidated damages, penalties, attorneys' fees, and any other form of compensation or relief permitted under federal, state or local wage and hour laws, including, but not limited to the Fair Labor Standards Act and the New Jersey Wage and Hour Law.  Hudson agrees that he shall irrevocably and unconditionally release, acquit and forever discharge ETT with respect to any claims under state or federal law relating to any matter of employment or the provision of services with, to or for ETT, including any form of compensation or relief permitted under any federal, state or local laws, including, the Family and Medical Leave Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967, the Civil Rights Act of 1991, or the New Jersey Law Against Discrimination, during the time that Hudson was employed by or otherwise performed services for ETT, and will not commence or prosecute, either in concert or individually, any action or proceeding, whether legal, judicial or quasi-judicial, on behalf of himself or any other person or entity, asserting claims, against Defendants.  This release and waiver does not apply to Hudson's right to enforce this Agreement.

Nothing in this Agreement is intended to waive claims (i) for unemployment or workers' compensation benefits, (ii) for vested rights under ERISA-covered employee benefit plans as may be applicable on the date Hudson signs this Agreement, (iii) that may arise after Hudson signs this Agreement, or (iv) which cannot be released by private agreement.  In addition, nothing in this Agreement, including but not limited to the release of claims, prevents Hudson from filing

>a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, NLRB, Securities and Exchange Commission, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or other information, or from exercising rights under Section 7 of the NLRA to engage in joint activity with other employees, although by signing this release Hudson is waiving rights to individual relief based on claims asserted in such a charge or complaint, or asserted by any third-party on Hudson's behalf, except for any right he may have to receive payment from a government agency (and not Stoltzfus) [sic] for information provided to the government agency.

(Docket No. 8 at 4-5.)

The parties fail to cite any Third Circuit law supporting the inclusion of these provisions. Moreover, such provisions have been found by numerous courts to be unenforceable and acting in contravention of the FLSA, including within this District.

For example, in Brumley, the court struck both a confidentiality and general release provision from an otherwise fair and reasonable FLSA Settlement Agreement because, among other things, they undermine fundamental purposes of the FLSA. Brumley, 2012 WL 1019337, at *7-8. Brumley was a collective action in which petroleum inspectors alleged employer violations of the FLSA overtime and retaliation provisions. Id. at *1. In evaluating the parties' proposed settlement agreement, the court first found the agreement demonstrated a bona fide dispute and was fair and reasonable to the plaintiffs. Id. at *4-6. Next,

9

the court analyzed the propriety of the confidentiality and release provisions contained in the agreement and rejected both as unfair.  Id. at *6.

The confidentiality provision in Brumley prevented the plaintiff employees from speaking to anyone about the contents of the settlement and stipulated that in response to any inquiries the plaintiff employees must respond that "the matter has been resolved and I cannot talk about it."  Id.  The court found that such "compelled silence" permits an employer to "thwart[] the informational objective of the notice requirement by silencing [an] employee who has vindicated a disputed FLSA right[.]"  Id. at *7 (quoting Dees v. Hydradry, Inc., 706 F. Supp. 2d. 1227, 1242-47 (M.D. Fla. 2010)).  The court further found that such provisions potentially allow employers to retaliate against employees for asserting their FLSA rights by permitting them to sue if the employee speaks about the agreement.  Id.

Other courts have held similarly with regard to confidentiality provisions in FLSA settlement agreements.  See Brown v. TrueBlue, Inc., 2013 WL 5408575, at *3 (M.D. Pa. 2013) (citing Brumley in stating that there is "broad consensus" that FLSA settlement agreements should not be kept confidential because they permit retaliation and promote employee silence); Haley v. BellMark Tel. Corp., 2019 WL 1925116, at *5-6 (E.D. Pa.

10

2019) (rejecting a confidentiality clause in a single plaintiff FLSA action because prohibiting an employee from discussing the terms of an agreement with his co-workers frustrates the FLSA objective of widespread employer compliance and thwarts the public-private character of FLSA employee rights); cf. In re Chickie's and Pete's Wage and Hour Litigation, 2014 WL 911718, at *3 (E.D. Pa. 2014) (permitting the inclusion of a confidentiality provision in a collective action where such provision allowed widespread dissemination of the agreement as well as for the plaintiff employees to discuss the agreement with fellow employees).

As for the release provision in Brumley, it purported to release the defendants from any and all claims which "concern or relate in any way to the payment of wages or bonuses or any other form of compensation under the FLSA and any and all claims for retaliation under the FLSA . . . ." Brumley, 2012 WL 1019337, at *8.  In rejecting this provision, the court noted that the Supreme Court as well as lower courts have consistently rejected broad waivers of FLSA rights.  Id. (citing Brooklyn Savings Bank v. O'Neill, 324 U.S. 697, 705-08 (1945)).  The Brumley court was concerned that the release at issue incorporated prospective employer violations which could occur subsequent to the agreement and noted that the FLSA was enacted in part to address "inequalities in bargaining power between

11

employers and employees," and that such purpose is potentially threated by broad waivers of FLSA rights.  Id. (quoting Lynn's Food, 679 F.2d at 1352).

Indeed, releases in FLSA settlement agreements that waive a plaintiff employee's FLSA claims, claims unrelated to the subject litigation, and future or unknown claims are routinely rejected in the Third Circuit.  See Bettger, 2015 WL 279754, at *8-9 (rejecting a release provision in a single plaintiff FLSA action because it purported to release any and all claims the plaintiff may have against defendant, and the court had no information regarding the potential value of such released claims so as to evaluate fairness); Singleton v. First Student Mgmt. LLC, 2014 WL 3865853, at *8-9 (D.N.J. 2014) (approving a release provision in a FLSA collective action settlement agreement because it was limited to future claims related to the specific litigation at issue and did not incorporate any FLSA claims); Cruz v. JMC Holdings, Ltd., 2019 WL 4745284, at *7 (D.N.J. 2019) (approving a release provision in a FLSA collective action because it was limited only to the claims in the subject litigation, and noting that the parties intentionally circumscribed the scope of the release in recognition of the fact that general releases are disfavored in FLSA settlement agreements).

Several other courts outside the Third Circuit have also

12

reached similar conclusions on confidentiality and release provisions in FLSA settlement agreements. See Poulin v. Gen. Dynamics Shared Res., Inc., 2010 WL 1813497, at *2 (W.D. Va. 2010) (rejecting motion to approve and seal FLSA Settlement Agreement in a single plaintiff action because an included confidentiality provision undermines the purposes of the Act); Glass v. Krishna Krupa, LLC, 2010 WL 4064017, at *2 (S.D. Ala. 2010) (denying motion to approve FLSA Settlement Agreement in a single plaintiff action because a confidentiality provision undermines Department of Labor's regulatory effort to notify employees of their FLSA rights); Webb v. CVS Caremark Corp., 2011 WL 6743284, at *3 (M.D. Ga. 2011) (striking from a FLSA Settlement Agreement in a collective action a confidentiality provision because it was likely unenforceable due to the public filing of such agreements, as well as a release provision because it was found unfair to the plaintiffs).

Here, based on the comparison of the confidentiality and release provisions in Brumley and the other cited cases, it appears to the Court that the confidentiality provision and the release provision in the parties' settlement agreement are overbroad,[4] contravene the "public-private character" of employee

---

[4] As recited above, the release provisions contained in the instant agreement release Plaintiff's claims under the FLSA, as well as under several additional statutory causes of action unrelated to this litigation including: the Family and Medical

13

rights under the FLSA, and serve to "nullify the purposes of the Act." Brooklyn Savings Bank, 324 U.S. at 710.

Therefore, the Court will order the parties to show cause, within 15 days of today, as to why (1) the joint motion to approve the settlement should not be denied due to the inclusion of the confidentiality and general release of claims provisions in their current form, or (2) the Court should not strike those provisions and approve the remainder of the settlement terms.[5] The parties shall also modify the continuing jurisdiction provision to provide a reasonable termination date for the Court's retention of jurisdiction.

An appropriate Order will be entered.


Date: February 5, 2021               s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

Leave Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967, and the Civil Rights Act of 1991.  (Docket No. 8-2 at 4-5.)

[5] If the parties determine that they wish to modify or remove the confidentiality and general release provisions, they may resubmit a revised settlement agreement for the Court's consideration within 15 days.  Such revised settlement agreement should also modify the continuing jurisdiction provision as directed.

14